Vanessa R. Waldref
United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:21-CR-00029-RMP-1 |
| Plaintiff, | United States' Sentencing Position |
| v. | Sentencing Hearing: |
| BOBBY CHARLES OWENS, | October 27, 2022, at 9:30 a.m. |
| Defendant. | Spokane, Washington |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney, hereby submits the United States' sentencing position with regard to Defendant Bobby Charles Owens ("Defendant") in the above-captioned matter.

The United States recommends that the Court accepts and approves the Plea Agreement, which was entered under Federal Rule of Criminal Procedure 11(c)(1)(C), and imposes a sentence consistent with it: 12 years in custody, to be followed by a lifetime of Supervised Release.

United States' Sentencing Position – Owens – i

The United States' position is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument the Court may permit.

Dated: October 20, 2022

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

On August 4, 2022, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11"), Defendant Bobby Charles Owens ("Defendant") pleaded guilty to a single count of Attempted Child Sex Trafficking of a 15, then 16, year-old-girl, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), 1594(a). The Rule 11 Plea Agreement contemplates a sentence of 12 years in custody, to be followed by a lifetime of Supervised Release. The United States requests that the Court accepts and approves the Plea Agreement and imposes a sentence consistent with it.

## II. Facts

The relevant facts are set forth in the *Offense Conduct* section of the Presentence Investigation Report ("PSIR"), ECF No. 75, ¶¶ 10-25, and the *Factual Basis* section of Defendant's Plea Agreement, ECF No. 69, ¶ 8. In sum, Defendant engaged in a sexual relationship with the Minor Victim when she was 15 and then 16. *Id.* Defendant's conduct included engaging in acts that constituted the production of child pornography, as well as attempted and completed sex trafficking of the minor girl when he promised to, and then did, give her cash and marijuana for sex. *Id.* The Minor Victim and her family had a longtime relationship with Defendant, who had known her since she was 7; in his Facebook communications with her, he called her his "Niece." ECF No. 75, ¶¶ 12, 21.

## III. The Presentence Report

For purposes of calculating the appropriate range under the United States Sentencing Guidelines (the "Guidelines"), the United States concurs with the Probation Office that Defendant's final adjusted offense level is 42, and that Defendant has 6 criminal history points, placing him in Criminal History Category IV. ECF No. 75, ¶¶ 45, 180. Defendant's properly-calculated Guidelines range is 360 months to life. ECF No. 75, ¶ 259. There is a ten-year mandatory minimum sentence, because the victim was older than 14 but younger than 18. *Id.*

United States' Sentencing Position – Owens – 1

## IV.   The United States' Sentencing Recommendation

The United States respectfully recommends a sentence of 12 years (144 months) in custody, a lifetime of supervised release, no fine, restitution as requested, and special assessments of $100 (mandatory) and $5,000 (absent a finding of indigence by the Court). The United States submits that such a sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth at 18 U.S.C. § 3553.

If the Court were to reject the terms of the Rule 11 Plea Agreement or sentence Defendant to something less than 12 years (144 months), the United States would withdraw from the Plea and proceed to trial on Defendant's charged conduct, which include at least one offense that carries a mandatory minimum sentence of 15 years. As the Court can see from the PSIR, the United States faces minimal litigation risk in front of a jury.

### A.   The Nature and Seriousness of the Offense and Defendant's Respect for the Law

Defendant's conduct is unquestionably serious. Given the Defendant's longstanding relationship with the minor victim, he certainly abused her trust and the trust of her family. At the same time, the victim's age and the nature of the communications put this case in a different context than cases in which the victim is a toddler or young child. Considering all of the factors present here, the United States respectfully submits that 12 years is an appropriate sentence.

### B.   Defendant's Personal History and Characteristics

Defendant is neither young nor healthy, and his criminal history is long. At the same time, the United States does not see in his personal history or characteristics a longstanding sexual interest in minors.

In addition, law enforcement officers reviewed the entirety of Defendant's available Facebook records; there was no indication of him seeking out sex with other girls whom he knew to be minors.

United States' Sentencing Position – Owens – 2

### C. Just Punishment

Despite any relevant mitigation, Defendant repeatedly sought out sex with a girl he knew to be a minor, with whom he had a trust relationship. That conduct speaks for itself, and demands serious punishment. The only mechanism for creating accountability in this process is the sentence imposed by this Court.

### D. Deterrence

General and specific deterrence are necessary here. Defendant and others who seek out sex with children must know that they may go to federal prison for a long time if they are to be meaningfully disincentivized from acting on their worst impulses. The Court's sentence must be long enough to make Defendant and others take it seriously; to deter, a sentence has to be distasteful enough to keep people from acting how they otherwise would act.

### E. Protection of the Public

Minors deserve to live in a world in which they are safe from predation in any form. Defendant's demonstrated conduct created a danger. It is the United States' hope that Defendant being in prison for 12 years will meaningfully protect any other 15 or 16 year old girls who might otherwise have caught Defendant's eye during that time. The United States submits that 12 years will be sufficient but not greater than necessary to meet the statutory goals of sentencing. The ongoing need to protect the public also justifies a lifetime of supervised release.

### F. Avoidance of Unwarranted Sentencing Disparities

The best way to ensure consistent sentences for similarly-situated defendants across the country is for courts to apply the sentencing Guidelines in the same manner everywhere. *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that the Guidelines "help to maintain uniformity in sentencing throughout the country"). The United States' recommendation is below the Guidelines, but it takes into account the victim's age and the nature of their communications.

United States' Sentencing Position – Owens – 3

### G. Fine, Special Penalty Assessment, Restitution, and Forfeiture

The United States is free to make any recommendation concerning a criminal fine. The Probation Officer has analyzed Defendant's financial condition and has concluded that he lacks the financial means, assets, and/or resources available to reasonably make payment on financial obligations imposed by the Court. ECF No. 75, ¶ 236. Accordingly, the United States does not seek a fine. A $100 special assessment is mandatory. The United States defers to the Court regarding Defendant's indigence and the applicability of the $5,000 Special Assessment pursuant to the Justice for Victims of Trafficking Act of 2015.

### H. Compassionate Release

At the change-of-plea hearing in this case, the Court expressed some concerns about the Compassionate Release waiver contained in the Plea Agreement. *See* ECF No. 69, ¶ 21. The United States respectfully submits that this case is the paradigmatic example of why it is reasonable for a Defendant to elect to waive an ephemeral future Compassionate Release claim in order to secure the very real opportunity to go to prison for a shorter time. If the Court imposes a sentence of 12 years, Defendant will have avoided a 15-year mandatory minimum sentence that would apply after a jury trial and conviction. Part of the benefit of the bargain to the United States in resolving this case at 12 years rather than something higher (which would not be unreasonable given Defendant's conduct) is finality of litigation, including litigating a future Compassionate Release claim.

There is nothing unfair about a Defendant electing to enter an agreement with the United States in which he gets a shorter Rule 11 recommendation from the United States, but the terms of the agreement include finality of litigation. Defendant should have that choice—just as he has the choice to waive jury trial, the right to silence, and all of the other rights he gives up in a Plea Agreement, in exchange for finality of litigation and the hope of a lower sentence.

United States' Sentencing Position – Owens – 4

To help explain the United States' position on Compassionate Release waivers, the United States submits the following.

### 1. The First Step Act

Section 603(b) of the First Step Act amends 18 U.S.C. § 3582 to permit inmates to file motions in district court seeking "compassionate release." Previously, only the Director of Bureau of Prisons ("BOP") could file such a motion. Thus, under prior law, BOP controlled whether an inmate could get relief, as a court could not act unless the Director of BOP first filed the necessary motion. *See, e.g., United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997) (petitioner not entitled to compassionate release absent motion from BOP Director).

Under the First Step Act, an inmate may now file a motion after exhausting administrative review of the denial of a request to BOP for compassionate release, or after 30 days have passed since the request was made to the warden, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). As it currently reads, post-First Step Act, 18 U.S.C. § 3582(c)(1)(A) permits reduction of the term of imprisonment upon a finding that:

> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).

The policy statement issued by the Sentencing Commission is found at U.S.S.G. § 1B1.13, and focuses on circumstances such as illness, declining health, age, and exceptional family circumstances. However, the Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an applicable policy statement[ ] for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (quotation omitted). In *Aruda*, the Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. §1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*. In finding the policy statement was not binding, *Aruda* did not criticize §1B1.13; instead its holding turned on the unexpected inability of the Sentencing Commission to update §1B1.13 after passage of the First Step Act, due to its lack of a quorum. *Id.* at 800 n.1. While, per *Aruda*, §1B1.13 "may [still] inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant," the net result has been that a defendant may file a motion for compassionate release for any reason or for no reason at all. *Id.* at 802. Even completely meritless or legally baseless motions for Compassionate Release, however, require extensive responses from the United States – which necessarily reallocates government resources away from pursuing new criminal conduct.

### 2.     Limited Waiver

On March 11, 2022, the Deputy Attorney General provided guidance that prosecutors should not, as part of a plea agreement, require defendants to categorically waive the right to file a compassionate release motion or a successive motion or the right to appeal denial of the same. Instead, compassionate release waivers were limited to: (1) district-wide waivers negotiated with local defenders' offices, provided that the negotiated waiver does not categorically preclude the defendant from filing a first or successive compassionate release motion; (2) waivers that limit the permissible bases for a motion to those set forth in Section 1B1.13 of the Sentencing Guidelines, until that provision is amended by the

United States' Sentencing Position – Owens – 6

Sentencing Commission; and (3) in exceptionally rare cases such as certain terrorism and homicide cases, waivers negotiated with defense counsel, subject to the nondelegable approval by the U.S. Attorney.

The United States Attorney's Office for the Eastern District of Washington sought to take option 2, limiting the bases to those set out in U.S.S.G. § 1B1.13, and informed the Federal Defenders of Eastern Washington and Idaho of that plan. The Federal Defenders indicated immediate objection and detailed their concerns. In response, a "district-wide waiver" was negotiated with the local defenders' office, but instead of being more restrictive than U.S.S.G. § 1B1.13, it included all of the permitted bases in the policy statement (verbatim) *and* includes provisions permitting compassionate release petitions to be filed, without violating the plea agreement, when a subsequent change in the law impacts a mandatory minimum sentence for Defendant's offense of conviction and/or when Defendant is seeking compassionate release on the basis of ineffective assistance of counsel. Thus, the operative Compassionate Release waiver in this District actually allows some motions that Section 1B1.13 does not.

The district-wide negotiated waiver reads as follows:

> In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.
>
> The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:
>     a.   <u>Medical Condition of Defendant</u>
>         i.   Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

United States' Sentencing Position – Owens – 7

                metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

    ii.    Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

b. <u>Age of Defendant</u>

    i.    Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii.    Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c. <u>Family Circumstances</u>

    i.    The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii.    Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

d. <u>Subsequent Reduction to Mandatory Sentence</u>

    i.    Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii.    after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

    iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

United States' Sentencing Position – Owens – 8

    e.  Ineffective Assistance of Counsel
      i.  Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both
        1.  did not know at the time of Defendant's guilty plea, and
        2.  could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

Thus, the district-wide negotiated waiver still provides the full opportunity to seek compassionate release through the original BOP process, which was the only process available prior to 2018. Further, it still permits the full avenue of petitioning the district court directly under the provision of the First Step Act, which require a basis rooted in the U.S.S.G. § 1B1.13 policy statement. Further still, it goes beyond the text of the First Step Act and provides avenues for petitions where there is a subsequent change in law reducing a mandatory minimum and for ineffective assistance.

   **3.**  **Why Have a Waiver**

With so many exceptions, it begs the question: why would the United States seek such a waiver and what would it possibly preclude? The United States seeks a waiver, limited though it is, because, despite the very low number of criminal AUSAs, the Eastern District of Washington had 122 motions for compassionate release during the reporting period of the U.S. Sentencing Commission Compassionate Release Data Report (2021) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/compassionate-release/20210928-Compassionate-Release.pdf). While these petitions may not often granted, the United States still needs to respond to each one. Responses to the meritless petitions for compassionate release divert significant resources; it takes time that could otherwise be used to pursue other targets and make the community safer.

United States' Sentencing Position – Owens – 9

Essentially, post-*Aruda,* the U.S. Attorney's Office has received and been made to respond to any number of compassionate release motions seeking a reduction in sentence for no reason beyond that the defendant believed the adjudged sentence to be too high. The district-wide negotiated waiver precludes such baseless motions that take time and resources to respond to. As the United States has seen since the passage of the First Step Act, "[C]ompassionate release waivers—like other appellate waivers—sacrifice an opportunity for review in order to advance the government's legitimate interest in finality and the efficient use of prosecutorial resources, and in exchange for some other benefit that the defendant values more highly." *United States v. Bridgewater*, 995 F.3d 591, 600 (7th Cir.), *cert. denied*, 142 S. Ct. 476 (2021) (approving full waiver in plea agreement that pre-dated the First Step Act).

### 4. The Limited Compassionate Release Waiver is a Permissible Plea Term

#### a. Rights are Presumed Waivable

Statutory rights are presumed to be waivable in plea agreements, just as most constitutional rights are waivable. *See United States v. Mezzanatto*, 513 U.S. 196 (1995) (enforced a defendant's voluntary waiver of a protection under Federal Rule of Evidence 410, which normally bars the government from impeaching defendants with statements made during plea negotiations). In *Mezzanatto* the Supreme Court emphasized that defendants may waive even fundamental constitutional rights pursuant to a plea agreement. *Id*. at 201 (citing *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense); *Johnson v. Zerbst*, 304 U.S. 458, 465, (1938) (Sixth Amendment right to counsel may be waived)). A defendant may affirmatively waive his or her constitutional rights to have a jury trial, to confront and cross-examine witnesses against him, and to claim his Fifth Amendment privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 243, (1969) (guilty plea waives privilege against compulsory self-

United States' Sentencing Position – Owens – 10

1  incrimination, right to jury trial, and right to confront one's accusers).  The
2  Supreme Court has even upheld Section 1983 release-dismissal agreements.  *Town*
3  *of Newton v. Rumery*, 480 U.S. 386, 395-96 (1987) (noting the government's
4  interest in such a provision, as even when § 1983 claims lack merit, defending the
5  lawsuits is a substantial burden which diverts officials from their normal duties and
6  is expensive, and knowing and voluntary constitutional waivers do not violate due
7  process).  The Supreme Court has recognized waivers in plea bargaining are now
8  accepted as an "important component[ ] of this country's criminal justice system."
9  *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

### b.    Future Consequences

The Ninth Circuit has found appellate waivers knowing and voluntary despite later changes in the law.  *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2666 (2022).  That a defendant does not "foresee the specific issue that he now seeks to appeal does not place that issue outside the scope of his waiver." *United States v. Johnson*, 67 F.3d 200, 203 (9th Cir. 1995); *see also United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990) (rejecting the argument that an appellate waiver is "involuntary because it is logically impossible to make a knowing and intelligent waiver of unknown rights.").  Deciding the deal was not beneficial "with the benefit of hindsight [ ] does not make the choice involuntary." *Navarro-Botello*, 912 F.2d at 320.

Indeed, a defendant:

> knows precisely what he is "giving up in exchange for the benefits of the guilty plea at the very moment the plea is entered—a trial and the constitutional rights that accompany it.  Although there always remains a chance the law could change in the defendant's favor, the defendant knowingly and voluntarily assumes that risk because he receives a presumably favorable deal under existing law.

*Goodall*, 21 F.4th at 563–64 (quotation omitted).

### c. A Plea Agreement is an Enforceable Bargain

In exchange for the waiver, a defendant receives "certainty derived from the negotiated plea with a set sentence parameter." *Navarro-Botello*, 912 F.2d at 320; *see also Rumery,* 480 U.S. at 394, (a defendant must decide if "the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing" in a future action.). The Ninth Circuit, in *Goodall*, recognized policy concerns about a Defendant being able to revisit his plea and sentence upon a future change in circumstance noting, "the government would then become wary of offering plea agreements if the defendant could evade his obligations so easily . . . [as the] benefits of plea bargaining—efficiency and finality—would thus erode, as defendants seek to have their cake and eat it too." *Goodall*, 21 F.4th at 564 (citations omitted). "[P]ublic policy strongly supports plea agreements," as they save time and money with the "promptly imposed punishment without the expenditure of prosecutorial resources." *Navarro-Botello*, 912 F.2d at 321–22 (quoting *Rumery*, 480 U.S. at 393 n. 3).

While it is true a Defendant cannot know what the future holds for the terms of a plea agreement,

> A plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms. There is no do-over just because a defendant later regrets agreeing to a plea deal.

*Goodall*, 21 F.4th at 562. "[P]erhaps the most important benefit of plea bargaining, is the finality that results." *Navarro-Botello*, 912 F.2d at 321.

### d. Court's Limited Role in Negotiating Plea Terms

Federal Rule of Criminal Procedure 11(c)(1) provides, in relevant part: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). "The Federal Rules of

United States' Sentencing Position – Owens – 12

Criminal Procedure thereby expressly prohibit judicial participation in plea-agreement negotiations, the setting in which appellate waivers typically occur." *United States v. Gonzalez-Melchor*, 648 F.3d 959, 963 (9th Cir. 2011) (citations omitted).

The rule against judicial participation in plea bargaining protects parties against pressure to settle criminal cases on terms favored by a judge. *United States v. Andrade-Larrios*, 39 F.3d 986 (9th Cir. 1994); *see also In re Benvin,* 791 F.3d 1096 (9th Cir. 2015) (district court inappropriately involved itself in plea negotiations by expressing explicit views on the appropriate terms of the plea agreement and suggesting the terms he would and would not accept).

The proposed limited waiver of compassionate release is a permissible plea term that Defendant decided to agree to in exchange for the government action detailed in the plea agreement. With respect, the United States submits that the case law is clear: it is Defendants, not courts, who are empowered to negotiate plea terms. The United States knows of no case in which a Defendant's knowing and voluntary waiver of Compassionate Release – a right that is a magnitude lower than the numerous Constitutional rights waived in every plea agreement – has ever been found to shock the conscience or be arbitrary or capricious. It is simply another term of a Plea Agreement that is fair game for plea negotiations.

If the Court imposes a 12 year sentence in this case, Defendant will have avoided the exposure of a mandatory 15 year sentence. In order to secure that bargain, he agreed to waive future Compassionate Release claims. He should be held to his knowing and voluntary waiver of various rights in exchange for the bargain set out in the agreement. It was his choice and there was nothing coercive about it. Just as the United States cannot insist that a Defendant enter an agreement to waive appeal, a Defendant has no constitutional right to a plea bargain, or any particular terms in a Plea Agreement. *United States v. Wheat*, 813 F.2d 1399, 1405 (9th Cir.1987), *aff'd*, 486 U.S. 153 (1988).

United States' Sentencing Position – Owens – 13

Here, as in many cases in the District, the United States and Defendant have each decided it is in their interests to enter a Plea Agreement containing a Compassionate Release waiver. That term should be respected in the same way as all other terms in a duly-entered Plea Agreement.

**V.      Conclusion**

For the foregoing reasons, the United States recommends that the Court sentence Defendant to 12 years in custody and a lifetime of supervised release. The United States will also seek to enforce all terms of the duly-entered Plea Agreement, including Defendant's knowing and voluntary waiver of Compassionate Release.

Dated: October 20, 2022

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

                                    *s/ David M. Herzog*
                                    David M. Herzog
                                    Assistant United States Attorney

Certificate of Service – 1